**SILVERMANACAMPORA LLP**
Attorneys for Kenneth P. Silverman, Esq.,
 Interim Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Anthony C. Acampora
Brett S. Silverman

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                              Chapter 7

COLONIAL HOLDINGS, LLC,                                          Case No.:  14-75558 (AST)

                                  Debtor.
-----------------------------------------------------------------x

**APPLICATION FOR ENTRY OF ORDER DIRECTING THE EXAMINATION
OF TIME MANAGEMENT CORPORATION AND PRODUCTION OF DOCUMENTS
<u>PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

**TO:  THE HONORABLE ALAN S. TRUST
        UNITED STATES BANKRUPTCY JUDGE:**

Kenneth P. Silverman, Esq., the chapter 7 trustee (the "**Trustee**") of the bankruptcy estate of Colonial Holdings, LLC, the above-captioned chapter 7 debtor (the "**Debtor**"), by his attorneys, SilvermanAcampora LLP, submits this application (the "**Application**") seeking the entry of an order pursuant to Bankruptcy Rule 2004 authorizing and directing (i) the examination of Time Management Corporation (the "**Time**") by a person with knowledge of all of the dealings between the Debtor and Time (the "**Witness**"), and (ii) the production and turnover by Time of the information and documents more particularly set forth herein and in the proposed order annexed hereto as **Exhibit "A"** (the "**Requested Production**"), and respectfully represents as follows:

**Background**

1. On December 17, 2014, the Debtor filed a voluntary petition for relief under chapter 7 of Title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of New York (the "**Court**").

2. By Notice of Appointment, Kenneth P. Silverman, Esq., was appointed as the

interim chapter 7 of the Debtor's estate.

3. On January 31, 2003, the Debtor, as tenant, and Time, as landlord, entered into a "Lease and Agency Agreement" (the "**Lease**"), whereby, among other things, (a) the Debtor would lease the real property known as, and located at, 591 and 595 Stewart Avenue, Garden City, New York (the "**Real Property**"), (b) Time appointed the Debtor as exclusive managing agent for the Real Property, and (c) the Debtor had an option to purchase the Real Property from Time.

4. After the execution of the Lease, in or about 2011, the Debtor fell behind on the payments due to Time under the Lease (the "**Shortfall**"), and on June 2, 2011, the Debtor and Time entered into a "Forbearance Agreement", whereby, among other things, Time agreed not to cancel the Lease to allow the Debtor to obtain financing in order to cure the Shortfall (the "**Forbearance Agreement**").

5. Upon information and belief, due to the Debtor's inability to secure additional financing to cure the Shortfall, in or about August 2011, the Debtor and Time entered into a "Management Agreement" (the "**Management Agreement**" and, together with the Lease, the Forbearance Agreement, and any other agreements entered into between the Debtor and Time the "**Relationship Documents**"), whereby, among other things, the Debtor turned over management of the property to Time, and Time agreed not to cancel the Lease until such time as the Management Agreement was terminated.

6. Although the Trustee has been collecting and reviewing documents possessed by the Debtor with respect to the Real Property, Time, as manager of the Real Property, is in possession of information and documents, including the Requested Production, which are vital and necessary to the Trustee's investigation into the Debtor's business, management and operation of the Real Property, the value of the Real Property, and the circumstances leading to the filing of this case.

7. The Trustee has, on several occasions requested the Requested Production, as

well as, attempted to communicate with Time regarding, among other things, the management of the Real Property.

8. To date, the Trustee has not received any of the Requested Production. Time's failure to provide the Trustee with the Requested Production is hindering the Trustee's ability to properly administer the Debtor's estate, and provide value to the Debtor and its creditors.

## The Application

9. This Application is made pursuant to Bankruptcy Rule 2004, which provides: "On motion of any party in interest, the Court may order the examination of any entity." Bankruptcy Rule 2004 further provides that the examination may be with regard to the "acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate...."

10. In this case, the examination of the Witness, on behalf of Time, is essential to the Trustee's investigation of the Debtor's financial affairs because Time possess the only copies of the Requested Production. Moreover, the Trustee believes that the production of the Requested Production is essential, for, among other things, determining the liquidation value of the Real Property, existence of potential claims for relief against third parties, and the proper, effective, and efficient administration of the Debtor's estate.

11. Unless stated otherwise, the Requested Production shall cover the time frame of January 1, 2002 through and including the present.

12. The Requested Production sought by the Trustee in connection with this Application is as follows:

(a) any and all documents relating to the relationship between Time and the Debtor, the Debtor's officers, directors or insiders, and/or the Debtor's employees, including, but not limited to, the Relationship Documents and any correspondence in connection therewith;

(b) an accounting and production of copies of any and all payments or transfers of money of whatever kind or nature, whether by check, cash, wire transfer, or otherwise, made by the Debtor, its officers or insiders, the Debtor's affiliates, or the Debtor's affiliates' officers or insiders, to

        Time, or to any assignees of Time, from January 1, 2002 through and including the present;

(c) an accounting of all monies alleged to be owed by the Debtor to Time under any and all agreements or understanding, including the Relationship Agreements;

(d) an accounting and production of any current insurance policies entered into on behalf of the Debtor or to which the Debtor is a named insured, including a description of current premiums and term of each policy;

(e) all notes, memoranda, and correspondence of whatever kind or nature, including electronic/computer documentation such as e-mail correspondence pertaining, in any manner, to the Debtor, its employees, its officers or insiders, any of the Debtor's affiliates, or the Debtor's affiliates' officers or insiders, and the financial affairs of the Debtor, or the Real Property, including, but not limited to, the business operations of the Debtor or the maintenance, management, operations or financial affairs of the Real Property, in the actual or constructive possession, custody, control or otherwise of Time;

(f) any and all correspondence or communications of any kind by and between Time and the Debtor, its officers or insiders, the Debtor's affiliates, or the Debtor's affiliate's officers, insiders, assignees or transferees;

(g) during the time period of January 1, 2011 through and including the present, any and all of the following documents or information, regarding Time's management, care, and operations of the Real Property:

    1. all leases, contracts or agreements of any kind or nature with any third party, including, but not limited to, service providers, maintenance of the Real Property, purchases and other expenses made by Time with respect to the Real Property, including those made on behalf of the Debtor (collectively, the "**Contracts**" and each a "**Contract**");

    2. an accounting of all operating income (including rent collections) and expenses for the Real Property and Time's management of same, including, but not limited to, an accounting of all payments made on account of any Contract;

    3. an accounting of any and all payments made to Time on account of services provided, including, but not limited to, management of the Real Property, maintenance, repair, cleaning, landscaping and other services for the Real Property (collectively, "**Management Services**");

    4. any and all invoices prepared for any third party, or Time, as the case may be with respect to any Contract or Management Services;

5. any and all engineering reports or other documentation or information regarding the maintenance, repair, cleaning, landscaping and other services with respect to the Real Property;

6. any and all information and documentation regarding any taxes paid with respect to the Real Property, including, but not limited to, real estate taxes and tax refunds;

7. any and all information and documentation regarding any and all employees or other personnel hired by Time in connection with, and pursuant to the terms of the Management Agreement (each an "**Employee**"), including but not limited to, job description and Time's costs of the gross salary or wages, including bonuses and vacation pay, payroll taxes, insurance, worker's compensation, sick pay, etc., with respect to each such Employee(s);

8. any and all documentation regarding Time's compliance with obligations, including, but not limited to, workers' compensation, social security, unemployment insurance, wages, hours, working conditions and other matters pertaining to Time's personnel with respect to the Real Property, including, but not limited to, Employee(s);

9. any and all documentation and information regarding any past capital improvements to the Real Property conducted by Time or a third party vendee;

10. any and all accountings provided to the Debtor in connection with the Real Property;

11. any and all information and documentation with respect to any and all bank accounts, which hold or have held any of the Debtor's funds or revenues generated from the operation of the Real Property (including lease revenue), including, but not limited to, bank statements;

12. any and all information and documentation regarding leasing of the Real Property, including, but not limited to, rent rolls, current and past occupancy reports, leasing programs (including leasing parameters), rents, tenant improvement allowances, free rent periods and other tenant concessions, any cooperation or affiliation with licensed real estate brokers (including Time), advertising and/or other marketing materials (including renting plans, price lists, booklets, circulars and other advertising, including, evidence of the Debtor's consent and approval of such materials), evidence of consent and approval of each tenant of the Real Property;

13. any and all information and documentation with respect to any professional retained or engaged by Time with respect to the Real Property, including, but not limited to real estate brokers, attorneys, accountants, etc., including, but not limited to, all retention or engagement letters or agreements with such professionals, bills provided by such professionals, evidence of satisfaction of such bills;

       14. any and all information and documentation with respect to any offer to purchase the Real Property made to Time by any third party, including, but not limited to, any correspondence, purchase contracts, term sheets, offer sheets, *etc.*;

(h)    any and all financial information or documentation prepared or used by Time with respect to the Real Property, including, but not limited to, Cash Flow Statements, Income Statements, General Ledger(s), Balance Sheets, etc.;

(i)    any and all environmental reports or surveys conducted with respect to the Real Property;

(j)    any and all floor plans, structural designs, surveys with respect to the Real Property; and

(k)    to the extent the Witness does not maintain actual or constructive control over any of the documents requested above, but has knowledge as to the current or previous location of any of those documents, a statement setting forth the documents and, their location.

13.    No previous application or motion for the relief requested herein has been made to this or any other Court.

14.    If the Court approves the Application, the Trustee requests that an attorney authorized under Fed. Rule Civ. P. 45(a)(3) may issue and serve a subpoena, in accordance with Fed. Rule Civ. P. 45, substantially in the form as that annexed hereto as **Exhibit "B"** (the "**Subpoena**").

15.    Moreover, based on the foregoing, and upon the Declaration of Brett S. Silverman, Esq., which is annexed hereto as **Exhibit "C"**, the Trustee respectfully requests that the Court modify its Chamber's Procedures and authorize him to serve the Subpoena seeking production of the Requested Production from Time within seven (7) days from service, and an examination of the Witness within fourteen (14) days from service.

16.    The Trustee believes that shortening of the Chamber's Procedures with respect to production is vital to the administration of this estate, based in large part on the fact that Time is in possession of all of the necessary documents and information (a) by which the Real Property is operated and managed, and more importantly, (b) needed to value and maximize

the value of the Real Property at a sale of the Real Property.

17. Lastly, the Trustee believes that service of the Subpoena upon Time by overnight courier at: (i) 25 South Service Road, Suite 300, Jericho, New York 11753, Attn: Officer, Director or Manager; and upon (ii) Berkman, Henoch, Peterson, Peddy & Fenchel, P.C., 100 Garden City Plaza, Garden City, New York 11530 Attn: Bruce D. Mael, Esq., should be deemed good and sufficient notice and service of same.

**WHEREFORE**, the Trustee respectfully requests that this Court enter the annexed proposed order consistent with the relief requested herein and grant the Trustee such further relief as this Court deems just and proper.

Dated: Jericho, New York
January 14, 2015

          **SILVERMANACAMPORA LLP**
          Attorneys for Kenneth P. Silverman, Esq.,
           Chapter 7 Trustee

          By:    *s/ Anthony C. Acampora*
                 Anthony C. Acampora
                 A Member of the Firm
                 100 Jericho Quadrangle, Suite 300
                 Jericho, New York 11753
                 (516) 479-6300