# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

COLONIAL HOLDINGS, LLC,

                 Debtor.
-------------------------------------------------------------x

Chapter 7
Case No.: 14-75558 (AST)

### ORDER DIRECTING THE EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY TIME MANAGEMENT CORPORATION PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Upon the application dated January 14, 2015 (the "**Application**") of Kenneth P. Silverman, Esq., the interim chapter 7 trustee (the "**Trustee**") of the bankruptcy estate of Colonial Holdings, LLC, the above-captioned chapter 7 debtor (the "**Debtor**"), by his attorneys, SilvermanAcampora LLP, seeking the entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rule 2004**") authorizing and directing (i) the examination of Time Management Corporation (the "**Time**") by a person with knowledge of all of the dealings between the Debtor and Time (the "**Witness**"), and (ii) the production and turnover by Time of the information and documents as more particularly set forth in this Order and the Application (the "**Requested Production**"); and sufficient cause appearing therefore; and it appearing that entry of this Order is in the best interests of the Debtor's estate; and no adverse interest appearing; it is hereby

**ORDERED**, that pursuant to Bankruptcy Rule 2004, the Application is hereby approved in all respects; and, it is further

**ORDERED**, that the Witness is directed to appear for examination at the offices of SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, on fourteen (14) days written notice, and that SilvermanAcampora LLP is authorized to issue a subpoena, substantially in the form as that annexed to the Application as **Exhibit "B"** (the "**Subpoena**") with respect to such examination; and, it is further

**ORDERED**, that the examination of the Witness is to continue from day to day until

completed; and, it is further

**ORDERED**, that Time is directed to produce for examination and inspection, at the offices of SilvermanAcampora LLP, the following within seven (7) days from the date of the Subpoena:

(a) any and all documents relating to the relationship between Time and the Debtor, the Debtor's officers, directors or insiders, and/or the Debtor's employees, including, but not limited to, the Relationship Documents and any correspondence in connection therewith;

(b) an accounting and production of copies of any and all payments or transfers of money of whatever kind or nature, whether by check, cash, wire transfer, or otherwise, made by the Debtor, its officers or insiders, the Debtor's affiliates, or the Debtor's affiliates' officers or insiders, to Time, or to any assignees of Time, from January 1, 2002 through and including the present;

(c) an accounting of all monies alleged to be owed by the Debtor to Time under any and all agreements or understanding, including the Relationship Agreements;

(d) an accounting and production of any current insurance policies entered into on behalf of the Debtor or to which the Debtor is a named insured, including a description of current premiums and term of each policy;

(e) all notes, memoranda, and correspondence of whatever kind or nature, including electronic/computer documentation such as e-mail correspondence pertaining, in any manner, to the Debtor, its employees, its officers or insiders, any of the Debtor's affiliates, or the Debtor's affiliates' officers or insiders, and the financial affairs of the Debtor, or the Real Property, including, but not limited to, the business operations of the Debtor or the maintenance, management, operations or financial affairs of the Real Property, in the actual or constructive possession, custody, control or otherwise of Time;

(f) any and all correspondence or communications of any kind by and between Time and the Debtor, its officers or insiders, the Debtor's affiliates, or the Debtor's affiliate's officers, insiders, assignees or transferees;

(g) during the time period of January 1, 2011 through and including the present, any and all of the following documents or information, regarding Time's management, care, and operations of the Real Property:

    1. all leases, contracts or agreements of any kind or nature with any third party, including, but not limited to, service providers, maintenance of the Real Property, purchases and other expenses made by Time with

respect to the Real Property, including those made on behalf of the Debtor (collectively, the "**Contracts**" and each a "**Contract**");

2. an accounting of all operating income (including rent collections) and expenses for the Real Property and Time's management of same, including, but not limited to, an accounting of all payments made on account of any Contract;

3. an accounting of any and all payments made to Time on account of services provided, including, but not limited to, management of the Real Property, maintenance, repair, cleaning, landscaping and other services for the Real Property (collectively, "**Management Services**");

4. any and all invoices prepared for any third party, or Time, as the case may be with respect to any Contract or Management Services;

5. any and all engineering reports or other documentation or information regarding the maintenance, repair, cleaning, landscaping and other services with respect to the Real Property;

6. any and all information and documentation regarding any taxes paid with respect to the Real Property, including, but not limited to, real estate taxes and tax refunds;

7. any and all information and documentation regarding any and all employees or other personnel hired by Time in connection with, and pursuant to the terms of the Management Agreement (each an "**Employee**"), including but not limited to, job description and Time's costs of the gross salary or wages, including bonuses and vacation pay, payroll taxes, insurance, worker's compensation, sick pay, etc., with respect to each such Employee(s);

8. any and all documentation regarding Time's compliance with obligations, including, but not limited to, workers' compensation, social security, unemployment insurance, wages, hours, working conditions and other matters pertaining to Time's personnel with respect to the Real Property, including, but not limited to, Employee(s);

9. any and all documentation and information regarding any past capital improvements to the Real Property conducted by Time or a third party vendee;

10. any and all accountings provided to the Debtor in connection with the Real Property;

11. any and all information and documentation with respect to any and all bank accounts, which hold or have held any of the Debtor's funds or revenues generated from the operation of the Real Property (including lease revenue), including, but not limited to, bank statements;

12. any and all information and documentation regarding leasing of the Real Property, including, but not limited to, rent rolls, current and past occupancy reports, leasing programs (including leasing parameters), rents, tenant improvement allowances, free rent periods and other tenant concessions, any cooperation or affiliation with licensed real estate brokers (including Time), advertising and/or other marketing materials (including renting plans, price lists, booklets, circulars and other advertising, including, evidence of the Debtor's consent and approval of such materials), evidence of consent and approval of each tenant of the Real Property;

13. any and all information and documentation with respect to any professional retained or engaged by Time with respect to the Real Property, including, but not limited to real estate brokers, attorneys, accountants, etc., including, but not limited to, all retention or engagement letters or agreements with such professionals, bills provided by such professionals, evidence of satisfaction of such bills;

14. any and all information and documentation with respect to any offer to purchase the Real Property made to Time by any third party, including, but not limited to, any correspondence, purchase contracts, term sheets, offer sheets, *etc.*;

(h) any and all financial information or documentation prepared or used by Time with respect to the Real Property, including, but not limited to, Cash Flow Statements, Income Statements, General Ledger(s), Balance Sheets, etc.;

(i) any and all environmental reports or surveys conducted with respect to the Real Property;

(j) any and all floor plans, structural designs, surveys with respect to the Real Property; and

(k) to the extent the Witness does not maintain actual or constructive control over any of the documents requested above, but has knowledge as to the current or previous location of any of those documents, a statement setting forth the documents and, their location;

and, it is further

**ORDERED,** that a copy of this Order and the Subpoena shall be served upon Time by overnight courier at: (i) 25 South Service Road, Suite 300, Jericho, New York 11753, Attn: Officer, Director or Manager; and (ii) Berkman, Henoch, Peterson, Peddy & Fenchel, P.C. 100 Garden City Plaza, Garden City, New York 11530 Attn: Bruce D. Mael, Esq., be deemed good and sufficient notice and service; and, it is further

**ORDERED,** that the Trustee is authorized and approved to do such things, execute such documents, and expend such funds as may be necessary and consistent with this Order.